ABRAHAM BARKER & others *vs.* PETER SALMON & others.

In the year 1796, A. owned one fourth part of a corn-mill and its appurtenances, and
  conveyed one eighth of said mill, &c. to B., and about the same time agreed to sell
  his other eighth part thereof to C. to whom he never gave a deed, but who paid for
  the same, took possession thereof, received a share of the tolls, and afterwards con-
  veyed the same one eighth part to D. D. and his 'assigns continued in quiet posses-
  sion until the year 1837. No acts of A., after 1796, tended to show his possession of
  said mill. &c . except his going upon the site thereof, in 1820 or 1821, after the mill
  was burned, and when those who claimed the property therein were also there, and
  forbidding them to rebuild the mill ; and his going, about seven years afterwards,
  into the mill which was rebuilt, and declaring to the person who had charge of it,
  that he owned one eighth part of the mill privilege.
*Held,* that the possession of C. and his assigns was adverse to A., and that A.'s heirs
  could not maintain a writ of right, commenced in 1837, on his seizin within forty
  years.

WRIT of right, in which was demanded one fourth part of
a corn-mill, and appurtenances, situated in Pembroke. The
demandants counted on the seizin of their ancestor, Benjamin
Barker, within forty years.

The following is the report of the evidence at the trial : Said
Benjamin Barker died in 1837, and the demandants are his only
heirs at law. On the 10th of April, 1787, Abel Baker, by his
deed of that date, duly acknowledged and recorded, conveyed
to said Benjamin one fourth part of the mill in question, and
said Benjamin thereafterwards was in actual possession of the
same until January 29th, 1796, when he conveyed one eighth
part of said mill to Thomas Turner. The only evidence tend-
ing to prove any actual possession by said Benjamin after his
said conveyance to Turner, was, that in 1820 or 1821, the mill
having been consumed by fire, the said Salmon and others (the
tenants) were on the site and making arrangements to rebuild,
when said Benjamin, being there present with them, forbade
their rebuilding ; and that, about ten years before the trial, he
was at the mill, and declared to the person who then tended it,
that he owned one eighth part of the mill privilege.

The tenants claimed to hold the demanded premises under a
deed from David Stockbridge, as guardian of Simeon McFar-
lane, dated January, 1820, purporting to convey the whole mill

and appurtenances. It was agreed by the parties, that said Stockbridge was duly licensed to sell said premises; that he had conformed to law in the sale thereof; and that said McFarlane had a good title in fee simple to seven eighth parts of the said mill, at the time of said sale. It was proved or admitted that Isaac Barker, brother of said Benjamin, (the demandants' ancestor,) conveyed the remaining eighth part to said McFarlane, by deed dated February 16th, 1810, and duly acknowledged and recorded. No deed or copy was produced by which said Benjamin or any other person conveyed said remaining eighth part to said Isaac Barker. But the widow of said Isaac testified, that about the time when said Benjamin sold one eighth part of the mill to Thomas Turner, said Isaac agreed to buy one eighth part thereof of said Benjamin, and that he was to pay fifty dollars therefor; that she understood, at the time, that said Isaac had an account against said Benjamin, and that when said Isaac afterwards went for his deed, said Benjamin would not give a deed unless said Isaac would pay him the money; and that said Isaac then and afterwards, until he sold to said McFarlane, received toll from said mill. A daughter and a son of said Isaac Barker testified, that about ten years before the trial, and after the death of said Isaac, on said daughter's asking said Benjamin if her father had paid him for the mill, he answered, " Yes, but I never gave him a deed."

Said Benjamin Barker, during the last thirty years preceding his death, resided about half a mile from said mill; and said Stockbridge testified that at the time of the sale of the mill by him, as above stated, he heard no claim made by said Benjamin, or by any other person, to any portion thereof. The auctioneer also testified that said Benjamin was at the auction when the mill was sold by said Stockbridge, and that he heard no objection made to the sale.

The tenants received the whole of the toll ever after their purchase of the mill, and there was no evidence that said Benjamin ever had any actual possession of the mill, or received any toll, for more than forty years before the commencement of this action.

It was agreed by the parties that the court might draw all inferences from the facts above reported, which a jury might draw, and that the tenants should be defaulted, or the demandants become nonsuit, according to the opinion of the court.

*Eddy*, for the demandants.

*Beal*, for the tenants.

PUTNAM, J. The demandants claim one fourth of a cornmill with the appurtenances, and count upon the seizin of their ancestor, Benjamin Barker, within forty years, and the descent of the right to them as his heirs at law. It is agreed that the demandants are the heirs at law of said Benjamin, and the question is, whether or not, from the facts which are proved or admitted in the case, the alleged seizin of the ancestor is to be legally inferred. He did become seized of the premises in virtue of the deed to him on the 10th of April, 1787, from Abel Baker ; and in the absence of any proof to the contrary, it is to be presumed that his seizin continued until his dea h. He died about three years before this statement of the case was made.

The case finds that the said Benjamin conveyed one eighth of the mill to Thomas Turner, on the 29th of January, 1796. And there was an agreement between the said Benjamin and his brother Isaac Barker, that the former should convey his remaining one eighth of the mill to the latter, about the same time that the former conveyed one eighth to Turner, viz. January 1796. But there is no evidence that Benjamin ever did in fact execute the deed of one eighth to Isaac. On the contrary, it is found that Benjamin, — on being asked by a daughter of Isaac, after his decease, about ten years ago, if her father had paid him for the mill, — answered " Yes, but I never gave him a deed." So that the evidence precludes any presumption that a deed was in fact given by Benjamin to Isaac according to their agreement. And the reason why it was not given may be satisfactorily inferred from the unwillingness of Benjamin to allow an account, which he owed to Isaac, to be considered and allowed as part payment of the price — the said Benjamin insisting upon having the money paid down. But however that may have been, we think there is not sufficient evidence to prove that the said Ben-

jamin parted with his interest, in his remaining eighth part of the mill, to Isaac by deed. The demandants therefore claim the one eighth of the mill, as heirs, and say that the occupation which Isaac had, and which the tenants have had, has been permissive, and not adverse. And if that be so, they may well recover. But on that part of the case, we think that the legal inference from the evidence is clearly in favor of the tenants.

It would seem that the said Isaac, *volens nolens* the said Benjamin, took the toll from the mill, after the agreement, and until the said Isaac conveyed the said one eighth of the mill to Simeon McFarlane, on the 16th of February, 1810. There is no evidence that either the said Isaac or the tenants ever attorned to the said Benjamin, or said or did any thing to show that they occupied by his permission. Indeed, the fact stated in the case, which has been somewhat relied upon to prove the claim of the demandants, viz. that in 1820 or 1821, after the mill was burnt, when the tenants were making arrangements to rebuild it, the said Benjamin forbade them — shows that a state of hostility, rather than a relation of landlord and tenant, existed between them. There is no evidence that the said Benjamin ever received any toll or rent from the said Isaac, from 1796 to 1810, when Isaac sold and gave a deed of the premises to McFarlane. Nor did the said Benjamin ever receive any toll or rent from the tenants, or from those under whom they claim.

It was proved that about ten years ago, the said Benjamin, being at the mills, declared that he owned one eighth part of the mill privilege ; and this has been relied upon as evidence of his continual claim. But the declaration was vain. He had then lost his right of entry. His brother Isaac, and those claiming under him, had been then in possession of the same one eighth part of the mill for more than twenty years, taking the profits to their own use. If the said Benjamin could then have maintained an action upon his own seizin within thirty years, he did not think proper to do so. And the reason is obvious. He knew his brother had paid him for the property, and that he and his assigns were equitably entitled to hold what they had so long adversely claimed and possessed. Benjamin lived about half a

mile from the mill. He was present at the sale at auction of the same to the tenants, making no objection thereto. And the toll was taken under a claim of right by said Isaac and his assigns, under whom the tenants claim, from about the year 1796; certainly for more than forty years before the commencement of this suit.

The court, being authorized by the agreement of the parties to draw all the inferences from the facts, which the jury would be authorized to do, do therefore declare, that from these facts it would have been the duty of the jury to find a verdict for the tenants, on the ground that the seizin and possession of the said Isaac and his assigns under whom the tenants claim, had been continued adversely to the said Benjamin for more than forty years prior to his death.

It is therefore the opinion of the whole court that the demandants should become nonsuit.